I see you have five minutes saved for rebuttal. Good morning and may it please the court. Kate Mollison, assistant federal public defender on behalf of Carlton Cash. With the court's permission, I would like to focus my argument today on issue three, the question concerning whether Dr. Cash is safety valve eligible under the statute 3553F for count four. This is a simple question of statutory interpretation, not guideline interpretation. Let's assume that I agree with you completely on the statutory interpretation issue. I'm interested in exploring on whether the district court's finding can or should or should not be affirmed or can or cannot be affirmed, even if you were exactly right. In other words, I read the district court as saying, even if this just applies to count four, that there is some evidence in the record from which I am making a reasonable inference that the firearm was in the safe protecting those drugs on the day that he took those drugs from the safe and drove them over to the to the Trader Joe's to to do to give the to make the transaction. Let's assume that there's a reasonable inference. I know you're not agreeing with that, but let's assume that's a reasonable inference that that is the case from the evidence. Would that be sufficient under your reading of the statute? Well, first, I want to clarify, Your Honor, that that is not what the court found. I agree that the court's ruling as the legal issue was not maybe the model of clarity. The court said it was not taking into account relevant conduct. She did. The district judge was very clear about that. But in fact, she did take into account relevant. What she said was under the rules of evidence and the way I can take into account circumstantial evidence in making an inference and the inference she made, I think, is the one that I've articulated. So you answer my question first and then we'll get to where you want to go. So assume for the moment that the district court did make that finding and assume for the moment. I know you're not agreeing to this, but I'm asking you to assume it for the purposes of this question, that that the inference that she drew was that the drugs were stored in a safe. He stored the gun in the safe that was done throughout the course of this. And on that date, on the Trader Joe's transaction, Mr. Kat, Dr. Cash took the money, took the drugs out of the safe where the gun was protecting it, drove it over to Trader Joe's, transacted the business, went back home. Would that be enough under your reading of the statute? I don't think so, because I do think that that even that is relevant conduct. I think that that's somewhat if we take another analogy, for example, a drug sale that happened in a street, you know, a street sale where a dealer makes a sale separate and apart from whatever's going on at his home. It might be true that that dealer, that individual has a gun locked in a safe in his home. That fact would not exclude him from safety valve eligibility. I agree with you. But this is the reason why this may be a little bit different is the gun's loaded. That's a relevant fact. The guidelines tell us it's a relevant fact. The gun, he always has the gun. We know that because his family tells us that. We know he has it for protection. The family tells us that, too. And we know that the gun is stored, at least for one incident, not all that long afterwards, with the drugs that are individually packaged in his safe. Well, I do think respectfully, Your Honor, it was it was a fair amount of time afterwards. It was five months later. It was. I also think it's important to look at the facts as to count for. We also know he had a gun all the time. It's not we don't just we don't have the gun in the safe. His family told us that. No, I and we agree with that. So so if that's the case, why is that? Why is that a reasonable inference may not be correct, but why is that a reasonable inference for the court to make that there was a gun in the safe next to drugs where he stored his drugs on the same day he made the transaction here? I think that if we look at take a close look at the facts as to count for, we can see why that's not a reasonable inference. As to that count, Dr. Cash and the CIA communicated when Dr. Cash was already outside the home as to this particular drug sale. There was no between the time of this communication, Dr. Cash did not return home to pick up the drugs. For example, the home was not at all involved in this particular transaction. Dr. Cash and the CIA made arrangements to meet at the Trader Joe's parking lot, which is where they met. And then the drugs transaction took place because this particular count is so divorced from anything occurring into the home, anything having to do with those firearms that were locked in the safe. I don't think that that would be a fair assumption. Are you suggesting that the district court, by considering circumstantial evidence in this way, is really using it as a backdoor for relevant conduct? I think that's right. And I also think it's worth taking a look at exactly, I mean, again, I think the transcript is a little confusing, but I think it's worth taking a look at exactly what the court says. The court says it was considering the circumstances of the other transactions when considering whether or not Dr. Cash was eligible for safety valve under count four. Those other transactions are relevant conduct explicitly. So even though, again, as Judge Luck just mentioned, the district court said it was not considering relevant conduct, it explicitly does consider relevant conduct. You can consider past acts in making inferences about how you acted on that day. I mean, that's the inference that the district court is making. The district court is saying, I'm considering just what happened here, but I'm using circumstantial evidence to make an inference about what happened that day. In other words, let's say it wasn't five months away. Let's say the day afterwards they raided the house and they found the gun in the safe. You would assume that it was the same gun and the same drugs that were done that day, or at least it's a lot closer of an inference. It is a lot closer, but again, that's not what happened here. Here we have a situation that occurred five months later. I know, but that just goes to the reasonableness of the assumption or the inference, but not to what the district court can do. If it's a day later, the district court can do it. It's not relevant conduct. It's just an inference. So to me, it's about the strength of that inference. And I understand that. And I think... Do I have that wrong? In other words, could the district court consider it if it was the next day? The district court, I would say it is perhaps a stronger inference were it the next day. Could the district court consider it the next day and it not be relevant conduct? Our argument would be no. What about if it was three hours later? No, because again, we're just looking at the elements of the statute. That can't be right. I mean, honestly, it can't be right that you have to look at just what happened at that moment at that second for doing so. Even the statutory language says, in connection with. In other words, even though the language of the statute indicates that you look at more than just what happened at that moment. And I think that that's a good point to bring up, because I think that that in connection with language actually helps us. What this court has made clear in terms of that phrase, what that phrase means, is it means either a gun is actually possessed, a gun is in proximity to the drugs that are sold, or a gun in some way facilitates those sales. I just think it's a little ironic that you're using how we've interpreted a guideline language that's similar to interpret the statute when you're telling us we should do the exact opposite here, that we should interpret the guidelines differently in the statute. I don't know that that helps you. Well, I think that to the extent that it limits what the purpose of the gun is, I think it is helpful. But I do think that Your Honor is right, that we are asking the court to only look at the statutory language, and I think that Congress was very clear that that word offense is limited to offense of conviction. But you would concede, if he had a gun in his car during the Trader Joe's incident, that the district court properly could have considered that? Absolutely. Okay. But we know he had the gun in the safe with drugs at his house. Why do we have to say, just because he's moved locations, he nonetheless, at his home, had to obtain the drugs and then go to Trader Joe's? We know he had the gun in his house. Why are we not allowed to look at the entirety of that transaction, from getting the drugs out of the safe to taking it to Trader Joe's? Because there was no evidence that the drugs were in the safe at that time. Five months later, there were some drugs with one of the guns. Well, we know in the... So I know the Trader Joe's happened in May. We know in March, he went to the bathroom, where presumably he got it from the same spot he got it from there. So we know at least sandwiched between Trader Joe's, which happens in May. So March and August, there were drugs in the safe, or in the bathroom at least. Well, it is worth saying that in that March transaction, there was no evidence that there was a gun in the safe at that time. Well, we know that from the family, don't we? Right. And I do think that those guns were always locked away in the safes. But as to whether or not those particular drugs that were sold on that day in Trader Joe's were ever in proximity to a gun, one of Dr. Cash's guns locked away in a safe, there is no evidence of that. Do we have to look at the exact drug that was sold on that day? If we know in his home he had a gun in a safe and he kept drugs in that safe, is it relevant? Why do we have to say, oh, but the drugs that he sold at Trader Joe's were never in the safe, or there's no evidence that they were in the safe? Why? Because that's what Congress instructed when it limited the offense to offense of conviction. We're talking about the drugs that were sold on that day, the exact drugs. And again, there's no evidence in the record supporting any proximity between the guns and the drugs. Well, you would agree that the district judge said that there was circumstantial evidence based on what had happened before. This is the way the drugs were stored and they were retrieved from the safe. So there was circumstantial evidence that it was connected. The district court did consider this concept of circumstantial evidence, but again, it did so in explicitly making clear that it was considering the circumstances of the other transactions which we believe is relevant conduct and exactly what Congress . . . Your position is that when Congress says connected to, that excludes any other related offense, related conduct? Well, really it's the phrase, or it's the term, the offense. That's what excludes the relevant conduct because the offense is, I think, unambiguously interpreted to mean the offense of conviction. The offense. Exactly. Connected with the offense. The offense of conviction . . . So that language excludes any circumstantial evidence regarding other conduct leading up to the . . . Exactly. And to make that clear, we can look at other sections of that same statute, like for example F-5, in which Congress does discuss, explicitly discusses relevant conduct. That's what the Eighth Circuit did with that? That's exactly what the Eighth Circuit did. That's exactly what Judge Colleton on the Eighth Circuit recently wrote, that this was an unambiguous statute, that this was clearly limited . . . the word offense is clearly limited to offense of conviction and several canons of statutory interpretation, including looking at the general structure of the statute to make that clear. Thank you. Oh, you . . . Do you mind if I ask something? I apologize for taking so long. Oh, no, no. I just want to make sure to ask you so I can ask your opposing counsel about it. Did you object . . . did you, not you . . . did Dr. Cash object explicitly that constructive possession could not be considered in the application of 2D1.1 or the Safety Valve Guideline? Your Honor, I don't remember an explicit objection as to constructive possession.  I appreciate that. Thank you. Thank you. Thank you, Ms. Mollison. And you do have time on rebuttal. Thank you, Your Honor. Ms. Gowler. Thank you, Your Honors. Brandi Gowler on behalf of the United States. May it please the Court. Under the statute and the guidelines, Cash qualifies for safety valve relief only if he shows by a preponderance of the evidence that his possession of the firearms was not in connection with the offense. That phrase, in connection with, is key. The words are not during, they're not in furtherance of. It's in connection with, and this Court has interpreted that phrase very broadly. A firearm that is found in close proximity to the drugs . . . Even understanding that it's modified by the in connection with language you're discussing now. We do not, Your Honor. Tell me why. This is why. This idea, this notion is argued in my brief at page 29. At the time, I didn't refer to it as the prior construction canon, but I now understand that to be how Judges Scalia and Garner have referred to it. What that says is that when you have a guideline, commentary, or any court, whether that's the Supreme Court or a group of lower courts, that interpret the language in a particular way and give a definition to it. If the legislature later reenacts that statute, they are essentially bringing with it that accepted definition that has happened. You're right that there is some canon that deals with something like that. I'm not sure if it's exactly in the nature of how you just described it. But I have to say, that's pretty weak in the instance of a statute that's passed and a with its own commentary, and then Congress then reenacts a statute, amends the other portions of it, and doesn't comment on that one, to be accepting of the interpretation of the Sentencing Commission about its own guideline about what that means. I'm having a hard time seeing that. In other words, it's different than if a statute existed, let's say, since 1900, and every court, including the Supreme Court, has interpreted a word to mean X, and that word has been used time and time and time again in that statute, then maybe I could see that at some point it's acquiescence. But I'm just having trouble understanding how we could see it as acquiescence under these circumstances. I think our circumstances are a lot closer to what you just described than you might realize. Since 1994, when the 3553F was created, the guidelines were promulgated at that time, and the commentary of defining offense more broadly was put in place at that time. After that time, several courts, in fact, every court that considered the issue of whether we were going to look at offense broadly to include relevant conduct, every circuit that looked at that came to the same conclusion. I'm not sure that a lot of the cases that you rely on are interpreting the word offense in the statute. And I understand them. I excuse those courts, including our own, for that matter, because there was perfect identity for the longest time between the guideline and the statute, and no one argued independent meaning. In other words, the argument that's being made here has not been made before. But now that we've disaggregated, at least for right now, until the commission speaks, the guideline from the actual statute, an argument is being made that the statute means something different than what the guideline interprets it to mean. I'm just having trouble seeing that somehow Congress acquiesced to that when Congress specifically has written a new guideline to be applied differently than a new statute to be applied differently than the guideline. Well, the Second Circuit in Chen in 2003 did look at this same one of the argument that carried the day in Hodgkiss for the Eighth Circuit. They looked at whether 3553F2 applies only to possession of a firearm during a particular offense. So the courts had looked at that particular argument before and rejected it. But Chen really didn't do any analysis. Really, the only case I found that did any analysis was the Hodgkiss case out of the Eighth Circuit. Why is that reasoning incorrect? The Hodgkiss analysis is very light, Your Honor, I would argue. The opinion is a page and a half, I think, on Westlaw. But they come to two conclusions in Hodgkiss. And the first is that they say, without a specialized definition, then we will look at the ordinary meaning of offense, and they look to a completely unrelated statute dealing with restitution to conclude that offense means is limited to the offense of conviction. Well, you say it's light. Can you refer me to an opinion that has an analysis of this issue that we're dealing with right now that's more complete than that? I don't think any of the... Because most of them just kind of mention it in passing. And I think part of that, I think, is because the guidelines' commentary language was so clear. But the other part of Hodgkiss that they refer to is they're trying to look at, to interpret the meaning of the offense in the statute by making a comparison between the offense in F-2 and the offense in F-5. And they rely on the surplusage canon to say, well, the Congress knew how to say more when it wanted to. So therefore, where they say more in F-5, they must have meant something different than in F-2. But Scalia and Garner recognize that the surplusage canon is not the be-all and end-all, that it is susceptible to possible misinterpretations. And it's our position that that's what happened in Hodgkiss, what led the court astray there. So none of the canons are the be-all, end-all. Correct. It's all to be considered as part of what the difficulty of interpreting language. That's what we do. But certainly, we have to consider that. What about the fact that Congress used the singular and not the plural? In which... The offense and offense? I'm talking about in the guideline. I'm sorry, in the safety valve statute, it used the singular. And the Supreme Court has told us as recently as, I think, last term in the immigration context that where the Supreme Court, which Congress uses the singular, it means a singular. In other words, you can't import other things to it. Well, I think it's all how... I'm not sure that advances the ball for us so much because... Well, it advances a little bit if the argument is that you're only to look at the offense of conviction. But it's... Well, but that's filling in the conviction. Well, it is. But if it's referring to the offense, it's not referring to four other offenses at different times. It's referring to the offense that you're applying the... In other words, the safety valve is applying it to a single statute and a single mandatory minimum. Here, it's the 10-year mandatory minimum that we're talking about. It's not done in bulk. We know that. You have to apply it to each of the statutes. The question is whether for the statute we're applying to, we also do all relevant conduct associated with that. But is Congress's use of the term an offense in the top paragraph of F and the offense in F2 indicating that it's discussing a singular offense? That's my question. I do not think so. I think when in 3553 generally, when we talk about the offense, we're talking about sentencing for what was committed, which is... And the courts take a very broad look at that. Let me shift you a little bit here, counsel. So let's assume I don't agree with you and I agree with your opposing counsel regarding how to interpret the term offense in the statutory safety valve. Why do you still win? Under your scenario, there's no other canon that we're looking at. We're just... You're saying... I'm telling you I don't agree with you. I agree with the Eighth Circuit. So why does the government still win, if at all, in this case? Because the guideline definition is still valid. Well, let me ask it then. Maybe I'm not being clear, so let me be clear. Did the district court make a finding that even if we read this just as an offense, there is a reasonable inference that on just considering the offense, in other words, just in May, the date of the Trader Joe's, that there was a gun used in connection with that offense? Right. Yes. Tell me what evidence supports that. So I think that takes us back then to the in connection with language and how broadly this court has viewed that. And when you think about that in terms of this particular case, Cash didn't just have the one loaded firearm. He had two. And they were in both locations where he had sold drugs to the same cooperating defendant within his home. One was in the study. The other was in the bathroom safe upstairs where the later drugs were found within inches of a loaded firearm. Can we use, so not considering relevant conduct, but can we use past and future actions to inform what happened on the day of a particular incident? In other words, if I did something yesterday and I do something tomorrow, can it be infirmed that I did, can it be assumed or inferred that I did that same thing today? In other words, I drink, drink coffee yesterday. I will drink coffee tomorrow. Can it be assumed that I have a cup of coffee today? Yes, it can. That is what the district court was, I think, referring to when she spoke about circumstantial evidence. But I think, I think there's still another important notion there of what, how broadly in connection with is. Let me, let me ask you one question related to that. Where, in practice, where is the daylight between, if you have a criminal defendant who receives the firearm enhancement under 2D1.1B1, where's the daylight then with, if we're looking at the safety valve relief in this case? Can a, can you give an example of where a defendant might be able to obtain safety valve relief who has already received a firearm enhancement? Sure. So the, the distinction there, um, which wasn't directly at play in this case, um, is that it's the burden of proof. So under, uh, the 2D1, it's a different burden, but what's the practical reality? I'm trying to say, like we've talked about their different burdens, but let's apply it to the facts of this case or alter them. If you have a criminal defendant who has received the firearm enhancement, when would that, when would that defendant still nonetheless be eligible for safety valve relief? If it's a distinction without a difference, I'd like to know that. Or if you can envision that there's a case where they don't all fall together. You're saying separate and apart from the burden of proof? I know the burdens are different, but like when we start applying these burdens and you have a criminal defendant who we know is receiving a firearm enhancement, when would that defendant have potentially, um, be eligible for safety valve relief? Where here in this case, he, you're arguing he gets both the firearm enhancement and doesn't get safety valve relief because of the broad use of the word in connection with. Right. I can't, I haven't given that thought in advance and right off the top of my head, I'm not coming up with a situation where it would, where the burden would be different. But certainly, um, that was something that the district court took into, uh, in, um, into consideration in recognizing that the two different burdens applied. Um, and I guess that's what I'm, that's what I'm trying to drill down and you don't have an example as to, we have different burdens, but in practical reality under what your argument, uh, it seems like there's really no ultimate difference. Well, I don't think that that's the case, your honor. I think that there could be situations where the evidence was such that the, uh, defendant wasn't able to meet the burden of showing that it was clearly improbable, but where there was some evidence, um, suggesting that, uh, that where he, he did have some evidence that was enough to meet the burden of, um, of showing by a preponderance. Perhaps that could be the, the type of firearm, um, whether it's an assault rifle versus a hunting rifle. Um, it could also be potentially whether the firearm was loaded or unloaded, whether there was a round in the chamber, the location of the firearm, how close the proximity was. I think there are many, many factors. Wasn't it easy to conceive a situation with multiple counts where the guideline would apply in one, but the, the, uh, safety valve may still be available with regard to another offense. Here, the argument that you're making, I think, is that the judge correctly looked at the circumstantial evidence regarding this pattern of behavior, other transactions with the, the only known storage place of the drugs and the gun being together. But if, if, uh, they're operating out of two locations perhaps, or going, uh, to another, uh, another, uh, area there, that would work, wouldn't it? Absolutely. That's another example. Your Honor. Of course. Yes. I'm going to ask you the same question I asked your opposing counsel. Was there an objection, an explicit objection made, uh, that the district court could not consider constructive possession in the application of 2d 1.1? I do not recall that being a specific objection that the, that was made before the district court. Okay. Thank you. Yes. Um, so I, I just, I want to make one point on the surplus age argument that I haven't been able to, um, say yet. And that is that, um, the, one of the, the, uh, fallbacks of that is that there can, there could be just poor drafting at times. And there can also be, um, times where, um, the, the legislature is just, um, I'm sorry. Um, the, the point is, is that in this situation there was a new context. What you're talking about in what the Congress is talking about in F five is a slightly different context than F two. Um, F two is limited to what the defendant's offense was, where in F five, they're looking at what you, you've got to tell all here, um, about not only what you did, but what everybody else did. And so, um, there's there, the Congress was placing in using that extra language. There was an emphasis there, um, that may not necessarily mean that the preceding, uh, term had a narrower meaning. Okay. Thank you. Thank you very much. All right. Ms. Mollison, you have five minutes on rebuttal. Thank you, Your Honor. I want to make clear that the facts as to count for are unique. This is the only sale that occurred outside the home. So as the judge Lux question as to whether or not we can properly infer previous sales and later sales in terms of what happened in terms of count for, I think the answer is no. Again, Dr. Cash made the communication with the CI regarding the sale when he was already out of the house. He did not return to the house before the sale was made. It could be a proper inference that, for example, Dr. Cash picked up the drugs to make that sale from someone else, you know, while he was out, bless you, while he was out and driving around. Um, this sale, this particular account was unique in that it was not at all connected to the home or to the firearms in the home. And I also think it's worth, um, mentioning exactly what the credited proffer testimony of the family in terms of the purpose of the guns was, um, that Dr. Cash had had these guns for many years. They were part of his family traditions, his cultural traditions, hunting, yeah, hunt with a pistol. Well, and, and the court also found that they were, they were, they serve the purposes of self-defense. I understand that the court felt like the connection to protect your drugs, no, I think protect your home because see, here's, this is, this is part of the problem. That inference is absolutely reasonable, but is it not also reasonable that a drug dealer would have a loaded firearm next to his drugs to protect those drugs? Is that not reasonable? I'm not saying it's right. It might be reasonable in the abstract, but as to Dr. Cash, I don't think it is because again, Dr. Cash had had these particular guns for many years. He was a practicing doctor for many years, he was not involved in any kind of drug trafficking during that time. But surely you would concede that possessing handguns can serve many different purposes. Of course. Um, but I think in this particular instance, it was clear that the handguns were possessed separate and apart from the drug trafficking. Um, and what I was, what I wanted to say, Except that they, one was kept in the same safe with the drugs. And it is a hard argument to make that a drug, someone who is dealing drugs who possesses a gun for self-defense isn't also protecting the drugs. Like I get the hunting argument and I can at least see a little bit on that. But when you start arguing self-defense for a drug dealer. So that might be true. Um, as to, for example, count five, um, when it was found, you know, five months after the count for count, um, the drugs were found close to the gun in the safe. So that might be true that that inference might be appropriate. I don't think that's appropriate as to count. The problem is there's other inferences to be drawn. We know from count three that, that drugs were also stored in the exact same place. And we know from the testimony of the family that the guns were always in the house and always in the safe. So it's not just that I think you were right. If we only had count five, this would be a tougher case for the government. But I think with those facts added in it, it's, it's hard for me to say that a district court clearly erred, which is a difficult thing, meaning there's no evidence. It's an irrational and illogical and unsupported factual conclusion to make. So I understand the district court found that, you know, it was a little too close to comfort as to, as to the other counts. But I do think that in connection with the offense has to mean something. And because Dr. Cash did not possess those guns in any way that facilitated count four, in any way that there was no evidence that they were, the guns were ever in proximity to the drugs that were sold in count four, he certainly did not possess the gun during the offense. I don't think that that is, that is the kind of conduct that Congress meant to exclude a defendant based on, based on that as to count four. And again, all we need is, is count four to get under the mandatory minimum so that the district court could have given the sentence that it believed it thought was appropriate, the 70 month sentence, which it felt like it could not do because that mandatory minimum was in place. I do think that the court really needs to take a close look at that word offense and that, that limiting factor of the word offense, because that word offense is limited to the offense of conviction. That's limited to the, to the elements of count four. And as to the government's arguments as to the cases it cites, I think it's worth noting those are all pre-Booker cases when the guidelines controlled and as the court noted, when those cases, those courts were interpreting the guidelines and not the statute. Today we're asking for relief only under the statute. I also think it's worth noting that those cases are pre-Kaiser cases and the courts in those cases, because they were pre-Kaiser, didn't follow the methodology that this court should be following today, which is that when a statute, regulation, guideline, what have you, is unambiguous as this one is, we give no deference at all to the Sentencing Commission's interpretation of it. And because we believe the statute is unambiguous, it's exactly what the Eighth Circuit found recently in Hotchkiss, I don't think that we need to be giving the Sentencing Commission's interpretation of it, which purports to expand the statute, which it simply cannot do. The Sentencing Commission cannot amend a guideline. Right, but you understand that if we agree with you, that we look at just the one offense, just the Trader Joe's, but then we agree with the government that it was in connection with, your client would still lose, if we take the government's broad reading of in connection with. Sure, but I think that the evidence simply doesn't support that the guns that were possessed, locked away in the safe, were actually in connection with the drug sale of COUNT 4. Thank you. Thank you, Your Honor. Thank you. Thank you both, and we have the case under advisement.